NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-658                                          Appeals Court


COMMONWEALTH vs. ISMAEL D. TEIXEIRA.


No. 18-P-658.

Plymouth.     April 2, 2019. - May 24, 2019.

Present:  Rubin, Henry, & Wendlandt, JJ.


Motor Vehicle, Operating to endanger. Alcoholic Liquors, Motor
     vehicle. Practice, Criminal, Required finding.


     Complaint received and sworn to in the Brockton Division of
the District Court Department on August 21, 2017.

     The case was tried before Michael A. Vitali, J.


     Jason C. Howard for the defendant.
     Danny F. Soto, Assistant District Attorney, for the
Commonwealth.


     HENRY, J.  The facts in this case differ from those in many

of our cases concerning convictions of negligent operation of a

motor vehicle under G. L. c. 90, § 24 (2) (a), because here the

defendant's car did not drift, weave, or swerve; the defendant

did not drive at an excessive speed, and there was no accident.

However, the defendant, after having consumed alcohol, was

driving well below the posted speed limit while holding a cell phone approximately one foot from his face, and while showing some signs of intoxication when stopped by a State trooper. These facts are sufficient to prove that the defendant operated his vehicle negligently "so that the lives or safety of the public might be endangered." G. L. c. 90, § 24 (2) (a). We affirm.

Background. On August 19, 2017, State Trooper Gregory Furtado observed the defendant driving between five and ten miles per hour in an area with a posted speed limit of thirty miles per hour. The defendant was manipulating a cell phone one foot away from his face and appeared to be reading something on the screen. Trooper Furtado "ran the license plate" and learned "there was no inspection results on the vehicle." Trooper Furtado followed the defendant for approximately one block. During this time, the defendant turned left onto a residential street. Trooper Furtado then activated his emergency lights to initiate a motor vehicle stop. The defendant immediately reduced his speed and safely brought his car to a complete stop. In the time the trooper observed the defendant operating a motor vehicle, the defendant did not weave, drift, or swerve; he did not strike any curb or another vehicle. There was nothing out of the ordinary in how the defendant made the left turn.

Upon approaching the car, Trooper Furtado observed the defendant's cell phone on the defendant's lap with the "GPS"[1] function open.  The defendant explained that he was using the cell phone's GPS to find his friend's house.[2]  Trooper Furtado detected the smell of alcohol coming from inside the car and noted that the defendant's eyes were bloodshot and his speech was slurred.  After requesting the defendant's license and registration, Trooper Furtado observed the defendant fumble with his wallet and pass over his license several times.

The defendant admitted to having consumed two beers that evening and agreed to perform field sobriety tests.  When exiting the vehicle, defendant was unbalanced and swayed back and forth.  When performing the one-leg stand, the defendant did not keep his foot six inches above the ground as instructed and placed his foot on the ground after eight and then eleven seconds, rather than after thirty seconds as instructed.  On the nine-step walk and turn, the defendant had difficulty following instructions, did not touch his heel to his toe on some steps, stepped on his own toes, and took ten steps instead of nine.

---

[1] The term "GPS" was never defined.  We assume it means global positioning system.

[2] Throughout his communication with Trooper Furtado, the defendant provided a total of four contradictory answers as to where he was going:  (1) to his friend's house; (2) to pick up his brother; (3) to his girlfriend's house; and (4) to his house.

The defendant was tried by a jury on a complaint charging him with (1) operating a motor vehicle while under the influence of intoxicating liquor (OUI), G. L. c. 90, § 24 (1) (a) (1), and (2) negligent operation of a motor vehicle.  The jury acquitted the defendant of OUI and convicted him of negligent operation.[3]  On appeal the defendant challenges the sufficiency of the evidence supporting that conviction.

Discussion.  1.  Standard of review.  At the close of the Commonwealth's case, the defendant moved for required findings of not guilty, which the judge denied.  When reviewing the denial of a motion for a required finding of not guilty, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (quotation omitted).  Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).  "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'"  Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303 (2016), quoting Commonwealth v. Woods, 466 Mass. 707, 713 (2014).

---

[3] Following the jury verdict, the judge found the defendant not responsible for two civil infractions, including sending an electronic message while operating a motor vehicle, in violation of G. L. c. 90, § 13B, and failing to have a valid motor vehicle inspection sticker, in violation of G. L. c. 90, § 20.

2. Sufficiency of the evidence. To sustain a conviction of negligent operation, the Commonwealth must prove that the defendant (1) operated a motor vehicle, (2) on a public way, and (3) negligently, so that the lives or safety of the public might be endangered. See G. L. c. 90, § 24 (2) (a). Only the third element is at issue in this appeal. The statute requires proof that the defendant's conduct might have endangered the safety of the public, not that it, in fact, did. See Commonwealth v. Duffy, 62 Mass. App. Ct. 921, 923 (2004). "Negligence in this context is determined by the same standard that is employed in tort law." Id. at 922 n.2.

This case, unlike many negligent operation cases, does not involve evidence of a collision, a near collision, a swerve, a departure from marked lanes, or any erratic movement of the motor vehicle other than speed significantly lower than the speed limit. See, e.g., Commonwealth v. Charland, 338 Mass. 742, 743-744 (1959) (affirming negligent operation conviction after head-on collision while defendant was traveling wrong way on rotary traffic circle); Commonwealth v. Ferreira, 70 Mass. App. Ct. 32, 33-35 (2007) (operating to endanger where, despite no pedestrians nearby, defendant accelerated in manner that caused tires to spin, car to "fishtail," and "screeching noise"); Commonwealth v. Daley, 66 Mass. App. Ct. 254, 256 (2006) (affirming negligent operation conviction where erratic

swerving while intoxicated such that defendant "nearly struck a large road sign"). Likewise, negligence per se does not apply here; a civil infraction alone is not sufficient to constitute negligent operation. See Duffy, 62 Mass. App. Ct. at 922 (evidence of speeding alone insufficient to support negligent operation conviction).

On the other hand, this court has sustained a conviction in the absence of a collision or near collision. In Commonwealth v. Ross, 92 Mass. App. Ct. 377, 377 (2017), this court held that evidence of the defendant's excessive speed at night on a narrow residential road -- after he had consumed alcohol -- was sufficient to prove that the defendant operated negligently so as to endanger the public.

In this case, after having consumed alcohol, the defendant was driving twenty to twenty-five miles per hour below the posted speed limit with his cell phone held one foot in front of his face.[4] See Ross, 92 Mass. App. Ct. at 380 ("The fact that

---

[4] General Laws c. 90, § 13B, prohibits an operator of a motor vehicle from "us[ing] a mobile telephone, or any handheld device capable of accessing the internet, to manually compose, send or read an electronic message while operating a motor vehicle" unless "the vehicle is stationary and not located in a part of the public way intended for travel." In its brief, the Commonwealth refers to a violation of G. L. c. 90, § 13B, as a crime; it is a civil infraction. Section 1 of G. L. c. 90 defines "[e]lectronic message" as "a piece of digital communication that is designed or intended to be transmitted between a mobile electronic device and any other electronic device; provided, however, that electronic message shall

the jury ultimately did not convict the defendant of OUI does not preclude their consideration of the evidence of intoxication in considering the negligent operation charge"). A defendant's driving need not have been erratic to support a conviction of negligent operation, so long as the conduct, taken as a whole, might have endangered the lives and safety of the public. See Commonwealth v. Sousa, 88 Mass. App. Ct. 47, 51 (2015) ("The question is whether the defendant's driving had the potential to cause danger to the public, not whether it actually did"). Even without any evidence of erratic driving, a reasonable jury could conclude that the defendant drove negligently so as to put the lives or safety of the public in danger when he had consumed alcohol and drove substantially below the speed limit while holding a cell phone one foot from his face.

Judgment affirmed.

---

include, but not be limited to, electronic mail, electronic message, a text message, an instant message, a command or request to access an internet site, or any message that includes a keystroke entry sent between mobile devices." Accordingly, § 13B does not prohibit passive cell phone Internet use, such as the use of GPS.

In this case, distraction can be inferred from the defendant's holding his cell phone so close to his face. The trooper also testified, without objection, that based on the position of the cell phone in relationship to the defendant's face, the cell phone "was definitely a distraction."