NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-745

COMMONWEALTH

vs.

KELLEY TORRES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury-waived trial in the District Court, the defendant was convicted of negligent operation of a motor vehicle.[1]  On appeal, the defendant argues that the evidence was insufficient to sustain the conviction.  She also argues that the motion judge who later served as the trial judge erred in denying her motions to suppress (1) her statements recorded by police body-worn cameras (BWC) in alleged violation of the State wiretap statute, G. L. c. 272, § 99; and (2) her statements made prior to her arrest that were "un-Mirandized."  See Miranda v. Arizona, 384 U.S. 436, 444-445 (1966).  Finally, she argues that

_____

[1] The judge found the defendant responsible for a marked lanes violation and speeding.  These civil infractions are not at issue in this appeal.

the errors in denying her motions to suppress were not harmless beyond a reasonable doubt. We affirm.

Background. The judge could have found the following facts. After midnight on December 30, 2021, State police Trooper Justin Pacheco was on patrol when he received a report of an "erratic" blue Jeep Wrangler "operating in Rhode Island [and] approaching Massachusetts." Multiple 911 calls regarding the Jeep were received by law enforcement in both States. Pacheco saw the Jeep traveling eastbound on Route 195, a public way, and followed it for just over a mile.[2] Pacheco observed "erratic operation," noting that the Jeep was traveling seventy-five miles per hour "in a posted 55," using "all three travel lanes, including the emergency breakdown lane." Pacheco elected not to stop the Jeep immediately as it was approaching a bridge, which was "not a safe [place] to initiate a motor vehicle stop." After it crossed the bridge, Pacheco tried to stop the Jeep, but it did not stop right away. The Jeep continued to use "all three travel lanes about six or seven times almost striking the median and the guardrail." The Jeep eventually came to a complete stop in the right travel lane as traffic, including eighteen-wheel trucks, continued to pass by. As Pacheco

_____

[2] Pacheco testified that Route 195 is a public way maintained by the State, an issue not contested at trial or on appeal.

2

approached the Jeep, his BWC was activated.  He saw the defendant behind the steering wheel "frantically" trying to hold a small dog as she spoke with him.  Pacheco noted "a slight odor of an intoxicating beverage as [the defendant] spoke with [him].  Glassy, bloodshot eyes."  The defendant said that she was on her way home to New Bedford from Foxwoods Casino, where she had a drink.[3]  She claimed that her dog jumping around the Jeep was the cause of her problematic driving.  Trooper Jesse Walker, who was also present at the scene, administered two field sobriety tests.  After failing the tests, the defendant was arrested.

Discussion.  1.  Sufficiency of the evidence.  The defendant argues that the evidence was insufficient to prove that she negligently operated the Jeep because the judge impermissibly speculated that the erratic driving was caused by the defendant's negligence rather than her dog.  We are not persuaded.  When reviewing a claim of insufficient evidence, we view the evidence in the light most favorable to the Commonwealth and determine whether it, together with any inferences permissibly drawn therefrom, is sufficient to permit the judge to find each essential element of the crime charged beyond a reasonable doubt.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  "The inferences that support a

---

[3] The defendant said that she was about to take a certain exit, which was twelve miles away from where she was stopped.

3

conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'" Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303 (2016), quoting Commonwealth v. Woods, 466 Mass. 707, 713, cert. denied, 573 U.S. 937 (2014), S.C., 480 Mass. 231, cert. denied, 586 U.S. 1054 (2018).

"To sustain a conviction of negligent operation, the Commonwealth must prove that the defendant (1) operated a motor vehicle, (2) on a public way, and (3) negligently, so that the lives or safety of the public might be endangered." Commonwealth v. Teixeira, 95 Mass. App. Ct. 367, 369 (2019). Here, only the third element is contested. "Negligence in this context is determined by the same standard that is employed in tort law." Id., quoting Commonwealth v. Duffy, 62 Mass. App. Ct. 921, 922 n.2 (2004). It "is the failure of a responsible person, either by omission or by action, to exercise that degree of care, vigilance and forethought which . . . the person of ordinary caution and prudence ought to exercise under the particular circumstances." Commonwealth v. Howe, 103 Mass. App. Ct. 354, 358 (2023), quoting McGovern v. State Ethics Comm'n, 96 Mass. App. Ct. 221, 232 n.25 (2019). Negligent operation only "requires proof that the defendant's conduct might have endangered the safety of the public, not that it, in fact, did." Teixeira, supra.

4

Here, there was overwhelming evidence that the defendant drove the Jeep in a negligent manner, which might have put the safety of others at risk. As detailed above, 911 callers in two States reported a Jeep driving erratically. Pacheco witnessed the Jeep speeding, and crossing three lanes of traffic numerous times, nearly crashing into the median and guardrail.[4] See Howe, 103 Mass. App. Ct. at 359, quoting Commonwealth v. Daley, 66 Mass. App. Ct. 254, 256 (2006) ("driving 'back and forth over the fog line . . . , [and] cross[ing] over two lanes of traffic' before nearly striking road work sign was evidence of negligent operation").

In addition, the defendant appeared to be intoxicated as evidenced by the slight odor of an alcoholic beverage on her breath, her bloodshot and glassy eyes, and the failed field sobriety testing. See Commonwealth v. Woods, 414 Mass. 343, 350, 353-354, cert. denied, 510 U.S. 815 (1993) (in proving negligent operation, evidence that defendant consumed alcohol prior to driving at night "is patently relevant to whether [she] exercised reasonable care while driving"). "The fact that the [judge] ultimately did not convict the defendant of [operating a motor vehicle under the influence] does not preclude [his] consideration of the evidence of intoxication in considering the

---

[4] The defendant also concedes that her speeding and improper lane changes were evidence of negligence.

5

negligent operation charge." Commonwealth v. Ross, 92 Mass. App. Ct. 377, 380 (2017).

And the defendant's failure to secure her dog while driving was further evidence of her negligent operation. See G. L. c. 90, § 13 ("No person, when operating a motor vehicle, shall permit to be on or in the vehicle or on or about [her] person anything which may interfere with or impede the proper operation of the vehicle . . . ."); Morse v. Sturgis, 262 Mass. 312, 314 (1928) ("If the [judge] found it to be a fact that the defendant drove the car accompanied by a dog, that fact did not relieve her from using due care under all the circumstances" to ensure dog did not interfere with proper operation of vehicle).

Finally, the judge was not required to accept the defendant's explanation for the erratic driving, see Commonwealth v. Bonner, 489 Mass. 268, 282-283 (2022), and the Commonwealth was not required to disprove "every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt" (citation omitted). Commonwealth v. Merola, 405 Mass. 529, 533 (1989).

Viewing this evidence in its totality, in the light most favorable to the Commonwealth, the evidence sufficed to prove beyond a reasonable doubt that the defendant drove negligently, endangering the lives or safety of the public. See Latimore, 378 Mass. at 677.

2.  Motions to suppress.  The defendant also claims that the judge erred in denying her motions to suppress statements recorded on the BWC video footage and without being Mirandized. Even if these statements were admitted in error, something we do not decide, the evidence of negligent operation was so overwhelming that the admission of the statements was harmless beyond a reasonable doubt.  See Commonwealth v. Ramsey, 466 Mass. 489, 494 (2013) ("An error may be considered harmless when other properly admitted evidence of guilt is so 'overwhelming' as to nullify any effect that the improperly introduced evidence might have had on the outcome" [citation omitted]).

                                        Judgment affirmed.

                                        By the Court (Blake, C.J.,
                                          Shin & Wood, JJ.[5]),

                                        Clerk

Entered:  May 28, 2026.

_____

    [5] The panelists are listed in order of seniority.

7